John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
E-mail: john@scottlawfirm.net
liza@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 851-1983
E-mail: izaak@izaakschwaiger.com

Attorneys for Plaintiff Fernando Del Valle

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO DEL VALLE<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF SONOMA, STEVE FREITAS, SCOTT THORNE, ANTHONY DIEHM, BEAU ZASTROW and DOES 1-50, inclusive.<br><br>    Defendants. | Case No: 3:17-cv-03611-JSW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:   September 29, 2017<br>Time:   9:00 a.m.<br>Courtroom:  5, 2nd Floor<br>          1301 Clay Street, Oakland, CA<br>Judge:   The Honorable Jeffrey S. White |

The Defendants motion to dismiss accuses Plaintiff of making conclusory allegations when in fact the allegations are quite specific and non-conclusory. This event was videotaped by the Deputies on scene and those videos are in the possession of the Defendants. While the Plaintiff was trying to protect himself from being killed or seriously injured the Defendants had a much better opportunity to observe what they did. The Plaintiff is prepared to amend his complaint, if necessary, to allege more specific facts after he is provided with the video evidence in the Defendants possession. Rule 8 is intended to put the Defendants on notice of the claims. The individual Defendants arguments that Plaintiff has failed to allege with sufficient specificity what each Defendant did in a rapidly escalating situation, which is recorded on a video in their possession, is absurd.

It is obvious from reading the complaint that the first two causes of action are made only as to the individual defendants. The third cause of action relates only to Sheriff Freitas, and the fourth and fifth causes of action relate only to the County as *Monell* claims.

The supervisory liability claim against Sheriff Freitas is based on specific factual allegations, not conclusions. In short, as Sheriff from January 2011 to the time of this incident, September 2016, his office had reviewed hundreds of use of force incidents and found every one (100%) to be within policy. This includes a number of obvious uses of excessive force evidenced by video recordings in his possession. This shows a reckless and callous indifference to the rights of others and set in motion a series of acts by others which he knew, or reasonably should have known, would cause others to inflict the constitutional injury alleged herein.

The fourth cause of action is a *Monell* deliberate indifference claim relating to the hiring of Defendant Scott Thorne. Prior to his being hired by the Sonoma County Sheriff's Office he had been terminated from two previous law enforcement agencies including the Richmond Police Department. While at Richmond PD he received three complaints of excessive force, one of which was sustained and another resulted in a civil rights lawsuit and settlement. This is one of those rare situations where the facts meet the test set forth in *Board of County Com'rs of Bryan*

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

*County v Brown*, 520 U.S. 397 (1997). For purposes of this motion the court must draw reasonable inferences in favor of the non-moving party. Given the facts alleged it should have been plainly obvious that Scott Thorne would engage in excessive force after given police authority by the Sheriff's Office. This was all the more foreseeable given the fact that no officer had ever been disciplined for excessive force by Sheriff Freitas as of the time of this incident.

The fifth cause of action is based on deliberate indifference and overlaps with the third cause of action. The allegations are quite specific, not conclusory. From January 2011 to September 2016 the Sheriff's Office had reviewed hundreds of use of force incidents including many obvious uses of excessive force evidenced by video recordings in the possession of the Sheriff's Office. None of these incidents was determined to be outside of policy, and no officer/deputy was ever disciplined for excessive force. The best evidence of this claim are the video recordings of obvious excessive force in the possession of the Sheriff's Office. Every incident was determined to be within policy. This is direct evidence of deliberate indifference in relation to supervision and discipline. The only remaining issue is one of causation – an issue typically in the exclusive province of the jury.

<u>**ARGUMENT**</u>

### I.    Applicable Law – Rule 8

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has consistently held that the "notice pleading" requirements of Rule 8 apply to most civil actions, particularly complaints brought under § 1983 alleging municipal liability. *Swierkiewicz v. Sorema*, 534 U.S. 506, 513 (2002).

The Supreme Court has also held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The issue is whether the plaintiffs are entitled to offer evidence to support the claims, not whether based on a complaint's allegations the will prevail as a matter of law. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) (quotations omitted).

To state a cause of action under 42 U.S.C. Section 1983, a plaintiff must allege facts to put defendants on notice of a constitutional violation that was committed under color of state law. *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012). However, "a plaintiff is not expected to plead evidence or specific factual details not ascertainable in advance of discovery." *See Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). "Civil rights plaintiffs . . . have never been expected to plead their evidence or specific factual details not ascertainable before discovery has taken place." *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, No. 09-20022, 1999 U.S. Dist. LEXIS 21440, 1999 WL 1211672, at *12 (N.D. Cal. Dec. 6, 1999). The Ninth Circuit permits plaintiffs to amend to identify individuals and their roles as they become known through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

## II.    First Cause of Action/Integral Participation Doctrine

The Ninth Circuit has consistently held that the integral-participation doctrine does *not* require that each officer's conduct individually violate the Constitution to expose that officer to liability, no less to put him *on notice* of a claim. Rather, this doctrine "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (emphasis added). This requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation may also be based on allegations of joint restraint.

> Green's assertion of excessive force is not premised solely on the pointed weapons but also on the fact that she was held at gunpoint while she was otherwise restrained. The only reason Sergeant Kim was not pointing his weapon at Green while she was restrained is that he was the one restraining her. Even if Sergeant Kim was not one of the officers actually holding Green at gunpoint once she was restrained, he was plainly an active

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

participant in this activity and a jury could find that he was an "integral participant" under Blankenhorn.

*Green v. City & County of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014) (emphasis added).

The Plaintiff seeks leave to amend, if necessary, to allege the acts and omissions of each Deputy defendant with more specificity. The video recordings in the possession of the Defendants will assist in that regard.

### III.  Second Cause of Action – False Arrest/False Imprisonment

An action for false arrest/false imprisonment may be brought under Section 1983 for a violation of the Fourth Amendment as an unlawful "seizure." *Pierson v Ray*, 386 U.S. 547 (1967). A person has been "seized" if a reasonable person would have believed he was not free to leave. *California v Hodari D.*, 499 U.S. 621 (1991).

Defendant Diehm contends that there are no facts alleged showing that he participated in the plaintiff's arrest or false imprisonment. The Plaintiff has alleged that the Defendants "acted in concert" and that they were on the scene at the time of the false imprisonment and arrest. Plaintiff has also referred to the "integral participation" doctrine above that would also apply to this issue. However, the Plaintiff requests leave to amend, if necessary, to allege with more specificity the involvement of Deputy Diehm in the false arrest and false imprisonment.

### IV.  Third Cause of Action – Supervisory Liability

The Plaintiff has alleged:

22.     The Sonoma County Sheriff's Office is a paramilitary organization that adheres to a chain of command. Officers can be disciplined for insubordination as well as for failing to comply with the law and policies of the Sheriff's Office. Sheriff Freitas is ultimately responsible as the final policymaker for the training and supervision of sworn officers, within his chain of command, regarding the use of force under color of law. In addition, Sheriff Freitas is the final policy maker regarding the manner in which use of force by his subordinates will be identified and investigated.

23.     Since he assumed command of the Sheriff's Office in early 2011 Sheriff Freitas has authorized, implemented and condoned a policy and practice of either not investigating use of force incidents by sworn officers under his chain of command, or conducting biased and result oriented investigations designed to conclude that uses of force, no matter how egregious, are within policy.

24.     Plaintiff has information and believes between 2011 and 2015 there were hundreds of use of force incidents reported to the Sheriff's office.  Those incidents included individuals where the use of excessive force was obvious based on video evidence in the possession of the Sheriff's office.  In recent years most use of force incidents are recorded on videotape and that evidence becomes part of the review process.  These videotapes of the use of force are the best evidence that a pattern and practice of the excessive use of force has been routinely approved and condoned by Sheriff Freitas and those within his chain of command.

25.     Sheriff Freitas is also the final decision maker regarding discipline to be imposed should a determination be made that an officer used excessive force.  As a result of the customs and practices identified above Sheriff Freitas had not disciplined any sworn officer under his chain of command for excessive force as of the time of this incident – September 2016.  The failure to discipline any officer for the use of force thus authorized, encouraged and condoned the pattern and practice of the excessive use of force by officers under his command.

The Ninth Circuit's model jury instruction states a supervisor may be liable under § 1983 if a jury finds the following:

1. the defendant acted under color of law;
2. the act[s] of the defendant's subordinate[s] [name[s]] deprived the plaintiff of [his] [her] particular rights under [the laws of the United States] [the United States Constitution] as explained in later instructions; and
3. [the defendant directed [his] [her] subordinate[s] in the act[s] that deprived the plaintiff of these rights.] **or**
[the defendant set in motion a series of acts by [his] [her] subordinates that [he] [she] knew or reasonably should have known would cause the subordinates to deprive the plaintiff of these rights.] **or**
[(a) the defendant knew, or reasonably should have known, that [his] [her] subordinate[s] were engaging in these act[s] and that their conduct would deprive the plaintiff of these rights; **and**
(b) the defendant failed to act to prevent [his] [her] subordinate[s] from engaging in such conduct.]

Model Ninth Cir. Jury Inst. 9.3 (emphasis added).

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir.2005) (citations omitted) (emphasis added); *Starr v. Baca*,

- 5 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

652 F.3d 1202, 1206–07 (9th Cir.2011) (plaintiff's allegations that supervisory defendant knew of conditions in jail of his subordinates' culpable acts and took no action were sufficient to state claim of supervisory liability for deliberate indifference), *cert. denied*, 132 S. Ct. 2101 (2012).

In *Larez v. City of Los Angeles*, the court approved the district court's instruction that the jury could find a police chief liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." (citations omitted). *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991). See also *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir.2005) and *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir.2003).

Plaintiffs' supervisory-liability claim is sufficiently pled. Plaintiffs have alleged Sheriff Freitas knew or reasonably should have known that his inaction in supervision and discipline showed a callous indifference to the rights of others, and, this was the moving force that caused Plaintiffs injuries.

### V.     *Monell* – Deliberate Indifference – Hiring

The plaintiff has alleged at paragraph 20 of his complaint:

20.     Deputy Thorne had been previously terminated from employment at two different police agencies prior to being hired by Sonoma County. Thorne's first termination was from the Richmond Police Department in 2002 after three complaints of excessive force. Of the three complaints, one was determined unfounded, one was sustained, and one resulted in a lawsuit and settlement in a civil rights action against Thorne. He subsequently found employment as a correctional deputy with the Los Angeles County Sheriff's department where he was dismissed for "failure to perform job requirements."

The leading case on the issue of deliberate indifference in relation to hiring a police officer is *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397 (1997).  In *Brown* an arrestee brought a Section 1983 action against a county, county sheriff, and reserve deputy for injuries she sustained during a traffic stop.  The case went to trial and plaintiff obtained a verdict. The jury determined that the hiring policy regarding the single decision to hire Burns was so

- 6 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

inadequate as to amount to deliberate indifference. Evidence was introduced at trial that Reserve Deputy Burns had a record of driving infractions and other misdemeanors, including assault and battery, before he was hired. Notably, Burns had no history of abusing his authority as a peace officer because he had no prior experience in law enforcement.

In *Brown*, the Supreme Court reversed on the hiring issue on the basis that the evidence failed to establish that a failure to perform adequate screening reflected deliberate indifference to a high risk that the deputy would use excessive force. The court held that Burn's history as a student would not make it plainly obvious that Burn's future use of excessive force would be an obvious consequence.

> " Even assuming without deciding that proof of a single instance of inadequate screening could ever trigger municipal liability, the evidence in this case was insufficient to support a finding that, in hiring Burns, Sheriff Moore disregarded a known or obvious risk of injury. To test the link between Sheriff Moore's hiring decision and respondent's injury, we must ask whether a full review of Burns' record reveals that Sheriff Moore should have concluded that Burns' use of excessive force would be a plainly obvious consequence of the hiring decision. On this point, respondent's showing was inadequate. To be sure, Burns' record reflected various misdemeanor infractions. Respondent claims that the record demonstrated such a strong propensity for violence that Burns' application of excessive force was highly likely. The primary charges on which respondent relies, however, are those arising from a fight on a college campus where Burns was a student. In connection with this single incident, Burns was charged with assault and battery, resisting arrest, and public drunkenness. In January 1990, when he pleaded guilty to those charges, Burns also pleaded guilty to various driving-related offenses, including nine moving violations and a charge of driving with a suspended license. In addition, Burns had previously pleaded guilty to being in actual physical control of a vehicle while intoxicated.
>
> The fact that Burns had pleaded guilty to traffic offenses and other misdemeanors may well have made him an extremely poor candidate for reserve deputy. Had Sheriff Moore fully reviewed Burns' record, he might have come to precisely that conclusion. But unless he would necessarily have reached that decision *because* Burns' use of excessive force would have been a plainly obvious consequence of the hiring decision, Sheriff Moore's inadequate scrutiny of Burns' record cannot constitute "deliberate indifference" to respondent's federally protected right to be free from a use of excessive force."

*Brown, supra*, at 412-414.

Here, Defendant Scott Thorne's history and background is directly related to his use of excessive force as a peace officer. Based on what is currently known, he was terminated from

two previous police agencies including the Richmond Police Department after three complaints of excessive force. At least one of the complaints was sustained and one resulted in a settlement of a civil rights action. Unlike Deputy Burns, Scott Thorne had a history of abusing his authority as a peace officer and was terminated from two other agencies.

If necessary, Plaintiff should be allowed to both amend his complaint and conduct discovery into what information was known to the County and Sheriff Freitas at the time the decision was made to hire Scott Thorne. The information now known, without discovery, could be only one piece of a larger puzzle. Notably, in *Brown* the plaintiff had the opportunity to conduct discovery on this issue. Drawing inferences in favor of the Plaintiff, given the facts alleged Scott Thorne's future use of excessive force was a plainly obvious consequence of his being hired as a deputy sheriff.

### VI.    *Monell* – Deliberate Indifference – Supervison and Discipline

This *Monell* claim based on deliberate indifference in some ways overlaps with a "custom and practice" claim, however, it is more nuanced and focused. The Plaintiff is not alleging there is a custom and practice of excessive force, nor that it is the routine practice of the Sheriff's Office. Rather, the Plaintiff has alleged that in those hundreds, out of thousands, of police contacts where force was used the Sheriff's Office has not determined that even one, out of hundreds, was outside of policy and amounted to excessive force. This is the basis for a deliberate indifference claim, i.e., the Sheriff and the County were deliberately indifferent to the substantial risk that its custom and practice of finding every use of force incident, no matter how egregious, within policy was so closely related to the deprivation of plaintiff's rights as to be the moving force that caused the ultimate injury. *Tsao v Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *Castro v County of Los Angeles*, 833 F.3d 1060 (9th Cir.2016) (en banc).

This claim essentially mirrors the claim against Sheriff Freitas regarding his deliberate indifference, as the Sheriff and final policy maker, to incidents of excessive force and the related failure to adequately supervise and discipline officers who engaged in excessive force. As a result of this custom and practice deputies were given the green light to use any amount of force

- 8 -

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

in any situation without fear of consequences since no officer had ever been disciplined by Sheriff Freitas for excessive force from the time he took office in early 2011 to the time of this incident in September, 2016. (Complaint, ¶¶ 23 and 25). This custom and policy is further evidenced by a number of videos of obvious examples of excessive force which were approved by the Sheriff's Office as being within policy. The videos in the possession of the Sheriff's Office are the best evidence of the deliberate indifference. (Complaint, ¶ 24)

This theory of both supervisory and municipal liability is well established in the Ninth Circuit. *Larez v City of Los Angeles, 946 F.2d 630* (9th Cir. 1991). The Plaintiff has alleged specific facts in support of these related claims. There have been hundreds of use of force incidents reviewed and approved as within policy since Sheriff Freitas took office.[1]

These specific allegations, if proven, clearly support a claim of deliberate indifference as against both Sheriff Freitas and the County of Sonoma. As to the issue of causation, that Plaintiff has alleged that the failure to discipline any officer for the use of excessive force was a "moving force" behind the injuries sustained by the Plaintiff.

### CONCLUSION

For the foregoing reasons the defendants' motion to dismiss the plaintiff's Complaint should be denied in its entirety, or, plaintiff should be granted leave to amend.

Dated: September 1, 2017

By: /s/ John H. Scott
_____
John H. Scott
Attorneys for Plaintiff

---

[1] Plaintiff is not aware of any other law enforcement agency in the Bay Area that has reviewed hundreds of use of force incidents without finding even one outside of policy. Statistically this could not occur unless there was bias and/or deliberate indifference infecting the review process. This is compounded by the video evidence of obvious excessive force that was condoned and ratified